**14-1060, 14-1091**

---

## UNITED STATES COURT OF APPEALS
## FOR THE FEDERAL CIRCUIT

---

MOBILEMEDIA IDEAS LLC,

Plaintiff-Cross Appellant,

v.

APPLE INC.,

Defendant-Appellant.

---

APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE IN CASE NO. 10-CV-0258, JUDGE SUSAN ROBINSON

---

## BRIEF OF DEFENDANT-APPELLANT APPLE INC.

---

GEORGE A. RILEY
LUANN L. SIMMONS
O'MELVENY & MYERS LLP
Two Embarcadero Center, 28th Floor
San Francisco, CA 94111
(415) 984-8700

# TABLE OF ABBREVIATIONS

"'068 Patent" refers to U.S. Patent No. 6,070,068.  A32727-48.

"'075 Patent" refers to U.S. Patent No. 6,253,075.  A43457-69.

"'078 Patent" refers to U.S. Patent No. 6,427,078.  A21062-75.

"Apple" refers to Defendant-Appellant Apple Inc.

"Bayless" refers to the prior art reference to the '068 Patent, U.S. Patent No. 5,754,636.  A57007-114.

"GSM" refers to the Global System for Mobile Communications standard.  A24226.

"JMOL" refers to "judgment as a matter of law."

"Kyocera" refers to the prior art reference to the '078 Patent, Japanese Patent Application Publication No. H6-133081.  A57595-612.

"Lucent" refers to the prior art reference to the '078 Patent, U.S. Patent No. 5,550,646.  A57613-21.

"MobileMedia" refers to Plaintiff-Cross Appellant MobileMedia Ideas LLC.

"PTO" refers to the United States Patent & Trademark Office.

## CERTIFICATE OF INTEREST

Counsel for Apple certifies the following:

1.    We represent Apple.

2.    Apple is the real party in interest.

3.    No publicly owned company directly owns more than ten percent of Apple.

4.    Appearing on behalf of Apple in the district court action were George A. Riley, Luann L. Simmons, David S. Almeling, Vision Winter, Melody N. Drummond Hansen, Xin-Yi Zhou, Michael Sapoznikow, Marc M. Breverman, and Jonathan Crawford of O'Melveny & Myers LLP; Richard K. Hermann and Mary Matterer of Morris James LLP; Tara D. Elliott, Ruffin B. Cordell, Frank E. Scherkenbach, John M. Farrell, and Lauren A. Degnan of Fish & Richardson, P.C.; and Eric S. Namrow and Jon Y. Chow, formerly of O'Melveny & Myers LLP. Appearing on behalf of Apple in this appeal are Mr. Riley, Ms. Simmons, Ms. Drummond Hansen, Mr. Zhou, Mr. Breverman, and Timothy D. Byron of O'Melveny & Myers LLP.

Date:  February 3, 2014                    Respectfully submitted,

                                           By:   /s/ *Luann L. Simmons*
                                                 Luann L. Simmons

# TABLE OF CONTENTS

**Page**

TABLE OF ABBREVIATIONS ................................................................. i

CERTIFICATE OF INTEREST ............................................................. ii

TABLE OF CONTENTS ...................................................................... iii

STATEMENT OF RELATED CASES ..................................................... x

INTRODUCTION .............................................................................. 1

JURISDICTIONAL STATEMENT ......................................................... 3

STATEMENT OF THE ISSUES ............................................................ 4

    I.  '078 Patent, Claim 73 ......................................................... 4

    II.  '068 Patent, Claim 23 ......................................................... 5

STATEMENT OF THE CASE ............................................................... 6

    I.  Procedural Background ......................................................... 6

    II.  The Patents ...................................................................... 9

        A.  '078 Patent .................................................................. 9

            1.  Alleged Invention And Asserted Claim 73 .................... 9

            2.  District Court's Claim Constructions .......................... 14

            3.  Accused Products ................................................... 17

            4.  Prior Art ............................................................. 18

        B.  '068 Patent .................................................................. 24

            1.  Alleged Invention And Asserted Claim 23 .................... 24

            2.  District Court's Construction Of "Listing Said Processing Items" ................................................. 29

## TABLE OF CONTENTS
### (continued)

Page

3.   Accused Products ...........................................................31

4.   Prior Art ........................................................................33

SUMMARY OF ARGUMENT .................................................38

STANDARD OF REVIEW.......................................................42

ARGUMENT .............................................................................43

I.   '078 Patent, Claim 73 .................................................43

A.   The Infringement Judgment Must Be Reversed
Because The District Court Improperly Construed
"Means … For Transmitting" ..............................................43

1.   The Correct Construction Of "Means … For
Transmitting" Requires A Telefax Modem...................44

2.   The District Court Erred In Construing "Means …
For Transmitting" To Encompass Transmission
Mechanisms Not Linked To The Claimed Function ....47

3.   The Accused Products Do Not Have "Means … For
Transmitting".................................................................52

B.   The Infringement Judgment Must Be Reversed
Because The District Court Improperly Construed
"Means For Processing And For Storing" ...........................53

1.   The Correct Construction Must Be Limited To The
Disclosed Processing And Memory Components
Within The Camera Unit That Are Dedicated To
Camera Functions.........................................................53

2.   The District Court Erred In Construing "Means
For Processing And For Storing" To Encompass
Structures Not Linked To The Claimed Function .......57

# TABLE OF CONTENTS
## (continued)

Page

3.  The Accused Products Do Not Have "Means For Processing And For Storing" As Required By The '078 Patent ..................................................................59

C.  The District Court Erred In Denying JMOL Of Invalidity Based On Obviousness .....................................60

1.  The Facts Underlying Apple's Obviousness Defense Are Undisputed.................................................61

2.  Claim 73 Is Obvious As A Matter Of Law ...................63

II.  '068 Patent, Claim 23 ..................................................................69

A.  The Infringement Judgment Must Be Reversed Because The District Court Improperly Construed "Listing Said Processing Items" ..........................................69

1.  The Proper Construction Of "Listing Said Processing Items" Must Be Limited To The Disclosed "List" Format And Cannot Include The Claimed Alternative "Matrix" Format.........................69

2.  Under The Proper Construction, The Accused Products Do Not Practice "Listing Said Processing Items" ..........................................................................75

B.  The District Court Erred In Denying JMOL Of Invalidity Based On Obviousness .....................................77

CONCLUSION ....................................................................................86

CERTIFICATE OF COMPLIANCE .......................................................87

# TABLE OF AUTHORITIES

**Page**

## <u>CASES</u>

*Accent Packaging, Inc. v. Leggett & Platt, Inc.*,
  707 F.3d 1318 (Fed. Cir. 2013) ................................................ 42, 53, 77

*Acumed LLC v. Advanced Surgical Servs., Inc.*,
  561 F.3d 199 (3d Cir. 2009) .................................................... 43

*Agrizap, Inc. v. Woodstream Corp.*,
  520 F.3d 1337 (Fed. Cir. 2008) .......................................... 65

*Andersen Corp. v. Fiber Composites, LLC*,
  474 F.3d 1361 (Fed. Cir. 2007) ........................................... 51

*August Tech. Corp. v. Camtek, Ltd.*,
  655 F.3d 1278 (Fed. Cir. 2011) .......................................... 42

*B. Braun Med., Inc. v. Abbott Labs.*,
  124 F.3d 1419 (Fed. Cir. 1997) ...................................... 43, 47

*Bayer Healthcare Pharm., Inc. v. Watson Pharm., Inc.*,
  713 F.3d 1369 (Fed. Cir. 2013) .......................................... 67

*Blackboard, Inc. v. Desire2Learn, Inc.*,
  574 F.3d 1371 (Fed. Cir. 2009) .......................................... 83

*Cybor Corp. v. FAS Techs., Inc.*,
  138 F.3d 1448 (Fed. Cir. 1998) .......................................... 42

*Electro Scientific Indus., Inc. v. Dynamic Details, Inc.*,
  307 F.3d 1343 (Fed. Cir. 2002) .......................................... 42

*ERBE Elektromedizin GmbH v. Canady Tech. LLC*,
  629 F.3d 1278 (Fed. Cir. 2010) .......................................... 73

*Felix v. Am. Honda Motor Co.*,
  562 F.3d 1167 (Fed. Cir. 2009) .......................................... 74

# TABLE OF AUTHORITIES
## (continued)

Page

*Fonar Corp. v. GE*,
  107 F.3d 1543 (Fed. Cir. 1997) ........................................................ 47

*Genentech, Inc. v. Novo Nordisk A/S*,
  108 F.3d 1361 (Fed. Cir. 1997) ................................................. 64, 66

*Graham v. John Deere Co.*,
  383 U.S. 1 (1966) ............................................................ 60, 61, 79, 80

*J & M Corp. v. Harley-Davidson, Inc.*,
  269 F.3d 1360 (Fed. Cir. 2001) ........................................................ 46

*KSR Int'l Co. v. Teleflex Inc.*,
  550 U.S. 398 (2007) ........................................................ 60, 63, 65, 68

*Laitram Corp. v. Rexnord, Inc.*,
  939 F.2d 1533 (Fed. Cir. 1991) ........................................................ 51

*Liebel-Flarsheim Co. v. Medrad, Inc.*,
  358 F.3d 898 (Fed. Cir. 2004) .......................................................... 74

*Lotus Dev. Corp. v. Paperback Software Int'l*,
  740 F. Supp. 37 (D. Mass. 1990) ...................................................... 81

*Lucent Techs., Inc. v. Gateway, Inc.*,
  580 F.3d 1301 (Fed. Cir. 2009) ........................................................ 42

*Medtronic, Inc. v. Advanced Cardiovascular Sys.*,
  248 F.3d 1303 (Fed. Cir. 2001) ......................................... 44, 47, 55, 57

*MobileMedia Ideas LLC v. HTC Corp.*,
  No. 2:10-cv-00112-JRG (E.D. Tex. Dec. 10, 2012) ............................. 46

*Northview Motors, Inc. v. Chrysler Motors Corp.*,
  227 F.3d 78 (3d Cir. 2000) ............................................................... 43

*Pharmastem Therapeutics, Inc. v. Viacell, Inc.*,
  491 F.3d 1342 (Fed. Cir. 2007) ........................................................ 84

# TABLE OF AUTHORITIES
## (continued)

**Page**

*Phillips v. AWH Corp.*,
   415 F.3d 1303 (Fed. Cir. 2005) ..........................................58, 70, 71, 73

*Robert Bosch, LLC v. Pylon Mfg. Corp.*,
   719 F.3d 1305 (Fed. Cir. 2013) ............................................................3

*Saffran v. Johnson & Johnson*,
   712 F.3d 549 (Fed. Cir. 2013) ....................................43, 48, 51, 53, 57

*Soverain Software LLC v. Newegg Inc.*,
   705 F.3d 1333 (Fed. Cir. 2013) .........................................43, 60, 61, 79

*Telemarketing Resources v. Symantec Corp.*,
   No. 88-20352, 1989 WL 200350 (N.D. Cal. 1989) ..............................81

*TruePosition, Inc. v. Andrew Corp.*,
   507 F. Supp. 2d 447 (D. Del. 2007)......................................................48

*Union Carbide Corp. v. Am. Can Co.*,
   724 F.2d 1567 (Fed. Cir. 1984) ............................................................68

*W. Union Co. v. MoneyGram Payment Sys.*,
   626 F.3d 1361 (Fed. Cir. 2010) ............................................................66

## STATUTES

28 U.S.C. § 1292(c)(2) ..................................................................................3

28 U.S.C. § 1338(a) ......................................................................................3

35 U.S.C. § 112 ¶ 6 ...............................................................................14, 43

## OTHER AUTHORITIES

*IEEE Standard Dictionary of Electrical and Electronics*
   *Terms* (6th ed. 1996) ...................................................................30, 75

*Webster's Third New International Dictionary* ..................................30, 74

# TABLE OF AUTHORITIES
## (continued)

**Page**

**<u>RULES</u>**

Fed. R. App. P. 32.1(b) ................................................................. 46

Fed. R. Civ. P. 54(b) ....................................................................3

## STATEMENT OF RELATED CASES

No other appeal in or from the civil action on appeal in this matter was previously before this Court or any other appellate court. Apple is not aware of any action pending in this or any other court that will directly affect or be affected by this Court's decision in the pending appeal. In addition to the civil action on appeal in this matter, MobileMedia previously alleged infringement of the patents at issue in this appeal in the following district court cases, all of which are now terminated: *MobileMedia Ideas LLC v. Research in Motion Ltd.,* No. 2:10-cv-00113 (E.D. Tex., terminated Sept. 8, 2011); *MobileMedia Ideas LLC v. Research in Motion Ltd.*, No. 3:11-cv-02353 (N.D. Tex., terminated Dec. 13, 2013); *MobileMedia Ideas LLC v. HTC Corp.*, No. 2:10-cv-00112 (E.D. Tex., terminated Oct. 8, 2013); *MobileMedia Ideas LLC v. HTC Corp.*, No, 2:13-cv-00382 (E.D. Tex., terminated Jan. 10, 2014).

# INTRODUCTION

Apple's appeal raises discrete legal issues of claim construction and obviousness regarding two claims—claim 73 of the '078 Patent and claim 23 of the '068 Patent—both of which relate to mobile phones. Claim 73 of the '078 Patent concerns transmitting pictures captured by a camera unit in a phone.  Claim 23 of the '068 Patent concerns displaying a menu of "processing items"—i.e., call handling options such as "hold" and "disconnect."

Regarding the '078 Patent, the district court incorrectly construed two means-plus-function terms:  "means ... for transmitting" and "means for processing and for storing" image information.  The constructions fail to limit these terms to the corresponding structures disclosed in the '078 Patent, instead permitting claim 73 to reach broadly beyond the patent's disclosure.  Because the infringement verdict relies on the flawed constructions and no reasonable jury could have found infringement under the proper constructions, this Court should reverse the denial of JMOL of non-infringement.

The district court also erred in denying JMOL of invalidity of claim 73 based on obviousness.  The '078 Patent is part of a crowded

1

field of prior art relating to cameras in mobile devices.   It is undisputed that two prior art references disclose all limitations of claim 73.  Given the evidence of reasons to combine these references and the complete absence of evidence of secondary considerations of non-obviousness, this Court should find claim 73 obvious as a matter of law and reverse the denial of JMOL of invalidity.

Regarding the '068 Patent, the district court incorrectly construed "listing said processing items," a limitation describing the format in which the processing items are displayed on the device's screen.  The construction disregards a distinction in the specification and claims between displaying processing items in the disclosed "list" format and displaying processing items in the disclosed alternative, "matrix" format.  Because the infringement verdict relies on the flawed construction and no reasonable jury could have found infringement under the proper construction, this Court should reverse the denial of JMOL of non-infringement.

The district court also erred in denying JMOL of invalidity of claim 23.  The sole distinction raised by MobileMedia to distinguish the cited prior art was the user pressing one key, instead of two keys, to

2

prompt the display of a menu of processing items. Because this distinction is trivial and based on a limitation not recited by claim 23, this Court should reverse the denial of JMOL of invalidity.

## JURISDICTIONAL STATEMENT

The district court had subject-matter jurisdiction over this patent infringement action pursuant to 28 U.S.C. § 1338(a). On October 3, 2013, the district court entered an FRCP 54(b) judgment on issues of infringement and validity for seven patents. A1-5. Apple appeals the judgment that it infringes claim 73 of the '078 Patent and claim 23 of the '068 Patent and that those claims are valid. *Id.* A party may appeal a judgment in a patent infringement action if the judgment is final except for an accounting. 28 U.S.C. § 1292(c)(2). An "accounting" under § 1292(c)(2) includes the determination of damages and willful infringement. *Robert Bosch, LLC v. Pylon Mfg. Corp.*, 719 F.3d 1305, 1320 (Fed. Cir. 2013) (en banc). Because the judgment for the above claims is final except for an accounting, this Court has jurisdiction over Apple's appeal.

3

# STATEMENT OF THE ISSUES

## I.    '078 Patent, Claim 73

1.    Whether the district court erred in construing "means … for transmitting" to cover any "cellular mobile phone unit," rather than limiting the construction to the only structure disclosed in the '078 Patent for performing the "transmitting" function—a telefax modem interfaced with a mobile phone unit.

2.    Whether the accused products infringe claim 73 of the '078 Patent under the proper construction of the "means … for transmitting" term when it is undisputed that these products do not include a telefax modem.

3.    Whether the district court erred in construing "means for processing and for storing" to cover any "image processing unit and memory unit," rather than limiting the construction to the only structure disclosed in the '078 Patent for performing the claimed functionality—processing and memory circuits within the camera unit.

4.    Whether the accused products infringe claim 73 under the proper construction of the term "means for processing and

4

for storing" when it is undisputed that these products do not include memory within the camera unit for storing images.

5.    Whether the district court erred in denying JMOL that claim 73 is obvious in light of Japanese Patent Application Publication No. H6-133081 ("Kyocera") and U.S. Patent No. 5,550,646 ("Lucent") when it is undisputed that these references combined disclose all limitations of claim 73, there are multiple reasons to combine the references, and MobileMedia presented no evidence of secondary considerations of non-obviousness.

## II.    '068 Patent, Claim 23

6.    Whether the district court erred in construing "listing said processing items" to cover any display format in which "the processing items are grouped together in an orderly fashion," rather than limiting the construction to the "list" format disclosed in the '068 Patent.

7.    Whether the accused products infringe claim 23 under the proper construction of the "listing said processing items"

term when the undisputed display format of processing

items on the accused products is a matrix, not a list.

8.    Whether the district court erred in denying JMOL that claim

23 is obvious in view of U.S. Patent No. 5,754,636

("Bayless"), when the sole distinction raised by MobileMedia

to distinguish Bayless—pressing one key, instead of two

keys, to prompt the display of processing items—is trivial

and based on a limitation not recited by claim 23.

## STATEMENT OF THE CASE

### I.    Procedural Background

Apple is incorporated and has its principal place of business in

California.  Apple designs, manufactures, and markets electronics,

software, personal computers and mobile devices, including several

models of iPhone, iPod, and iPad.  A934-65.

MobileMedia, a Delaware limited liability company that makes no

products, was formed in 2010 by Nokia Corporation, Sony Corporation

of America, and MPEG LA, LLC.  A19509-11 (431:18-433:2); A179-86.

Through numerous agreements and intermediate entities, Sony and

Nokia transferred 488 patents and patent applications to MobileMedia

6

so that it could try to enforce them through lawsuits. A179-86; A1142-47, A1181-484.

MobileMedia's strategy is to inundate courts and defendants with patent claims. MobileMedia filed this action in March 2010, alleging that iPhone and iPod products infringe fourteen patents. A214-31. In July 2010, MobileMedia amended its complaint to add two additional patents and additional accused products, including iPad. A562-81. Apple denied liability and asserted non-infringement and invalidity defenses and counterclaims for non-infringement. A950-51, A952-61. The district court bifurcated willfulness and damages issues. A982-87.

In April 2012, MobileMedia dismissed two patents with prejudice and deferred four others. A1780; A20819 (4:19-5:12). In November 2012, the district court addressed the ten remaining patents in an opinion on claim construction and summary judgment. A72-174. The court found all asserted claims of two patents invalid, all asserted claims of two patents not infringed, and three of the six asserted claims of the '068 Patent not infringed. A70-71.

Of the remaining six patents, MobileMedia elected to try claims 23 and 24 of the '068 Patent, claim 78 of the '078 Patent, and

claims 5, 6, and 10 of the '075 Patent. A19252-53 (174:13-175:9). At the close of MobileMedia's case-in-chief, Apple moved for JMOL on the grounds that MobileMedia had not proved direct or indirect infringement and that all claims are invalid. A18558-64; A20591-94 (1513:17-1516:5). The district court reserved judgment on Apple's motion. A20595 (1517:1-6).

Following a six-day trial, the jury returned a verdict that (1) Apple directly infringes all asserted claims; (2) Apple does not indirectly infringe any asserted claim; and (3) no asserted claim is invalid. A18605-12; A20591-94 (1513:17-1516:5).

Apple filed a renewed motion for JMOL or, alternatively, a new trial. A18714-16. The district court found all asserted claims of the '075 Patent invalid and not directly infringed and claim 24 of the '068 Patent invalid as anticipated by Bayless. A7-69; A6. The court denied Apple's motion with respect to claim 23 of the '068 Patent and claim 73 of the '078 Patent, and denied Apple's new trial motion. *Id.* In October 2013, the court entered final judgment of, inter alia, infringement and validity of claim 73 of the '078 Patent and claim 23 of the '068 Patent. A1-5. Apple filed a timely notice of appeal. A20803-08.

8

## II.    The Patents

### A.    '078 Patent

#### 1.    Alleged Invention And Asserted Claim 73

The early 1990s saw significant advances in the electronics industry that allowed for the miniaturization of computer components, resulting in the introduction of a wide range of new mobile devices. *See, e.g.*, A21066 (1:10-40); A20288-99 (1210:10-1221:5). Among other advances, telecommunications companies were able to integrate digital cameras into mobile phones. A20294-99 (1216:25-1221:5). The '078 Patent is one of many patents in this crowded field (*see id.*[1]), and claims a particular structure for a camera phone. As the lead inventor testified, "basically the ['078] patent is about how to use the camera in cellular phones." A4394 (68:14-20).

The '078 Patent discloses a portable "device for personal communication, data collection and data processing" that includes a "camera unit." A21062 (Abstract). The claimed device and camera unit are illustrated in Figures 3 and 5, respectively.

---

[1] *See also* A21957-77; A57115-23; A57124-58; A57613-21; A57595-612



**'078 Patent, Figures 3 and 5 (A21063-64) (annotated)**

The disclosed device has a two-level architecture—(1) a system-level central processor 4 and memories 13, as shown in Figure 3; and (2) a camera unit with a separate microprocessor (μP) 23 and memories 24, as shown in Figure 5. A21063-64.

When the camera unit 14 captures a picture, the image data collected by the image sensor 14a through optics 14b is processed by the camera unit microprocessor 23 and stored in the camera unit memories 24. A21067 (4:37-45, 4:48-54). The camera unit's backup battery 21 ensures the picture is retained in the camera unit memories without external power. A21067 (4:43-45).

The disclosed device can run applications that use the picture stored in the camera unit. A21068 (5:14-24). When an application

wants to use a picture, the device transfers the picture from the camera unit memories 24 to the system-level memories 13. *Id.*

A user can use a telefax application to wirelessly transmit a picture captured by the camera unit to a remote location as a facsimile. A21068 (5:61-6:6). The disclosed device's "data transmission properties are based on an analogue modem and the GSM data interface," such that a picture captured by the camera unit is "transmitted as a bitmap and a telefax message from the mobile organiser's memory unit via cellular mobile phone unit 17 comprising a telefax modem." A21067 (3:47-49), A21068 (6:3-6). The '078 Patent discloses no other mechanism for wirelessly transmitting a picture captured by the camera unit.

The '078 Patent discloses two other transmission mechanisms—email and text message—but neither is used for transmitting a picture captured by the camera. These transmission mechanisms are associated with a "notebook computer" embodiment that includes a detachable keyboard 28 and digitizer pad 29, shown in Figures 7 and 8, respectively. A21068-69 (6:24-8:18), A21065.



**Figures 7 and 8 of the '078 Patent (A21065)**

Text and images inputted through the keyboard and digitizer pad can be sent through email. A21069 (7:37-43). The '078 Patent does not disclose sending images captured by the camera unit through email. A21069 (7:37-41, 7:54-57); A32673-74.

In the '078 Patent, text inputted through the keyboard and digitizer pad can also be sent as a text message through Short Message Service ("SMS"). A21069 (8:5-12). SMS is a communications protocol for sending messages with up to 160 text characters. A24269, A24321. The '078 Patent also discloses using character recognition software to extract text from a picture of a handwritten note captured by the camera, which then can be sent as a text message. A21069 (8:5-15),

12

A21068 (5:53-58). SMS cannot be used, however, to transmit the actual

picture captured by the camera unit. A24226-326.

Claim 73 recites a device comprising a camera unit:

73. A portable cellular mobile phone comprising:

*[a]* a built in camera unit for obtaining image
information;

*[b]* a user interface for enabling a user to input signals
to operate the camera unit;

*[c]* a display for presenting image information obtained
by the camera unit;

*[d]* a microprocessor adapted to control the operations
of the camera unit in response to input signals from
the user interface, and to process image information
received by the camera unit; and

*[e]* means, coupled to said microprocessor, for
transmitting image information processed by said
microprocessor to another location using a radio
frequency channel;

*[f]* and wherein the camera unit comprises:

*[f1]* optics for obtaining image information;

*[f2]* an image sensor for obtaining image
information; and

*[f3]* means for processing and for storing at least a
portion of the image information obtained by the
camera unit for later recall and processing.

A21073 (16:1-19).

## 2.    District Court's Claim Constructions

Apple appeals the district court's constructions of two means-plus-function limitations in claim 73[2]:

- "means … for transmitting image information processed by said microprocessor to another location using a radio frequency channel," and

- "means for processing and for storing at least a portion of the image information obtained by the camera unit for later recall and processing."

For "means … for transmitting," the parties disputed whether the structure should be limited to a telefax modem interfaced to a mobile phone unit.  A124.  Apple argued that a telefax modem is an essential part of the only disclosed structure linked to the claimed function, and thus must be part of the construction.  A5322-24.  MobileMedia argued that "means … for transmitting" should be broadly construed to encompass all other transmission mechanisms using a radio frequency channel, including email and SMS.  A8211-12; A17845 (46:19-23).

---

[2] The parties agree both terms are governed by 35 U.S.C. § 112 ¶ 6. A2128, A2132; A5322-23, A5326-27.

The district court agreed with MobileMedia, holding that a telefax modem is not necessary to meet the "means … for transmitting" limitation.  A124.  The district court construed the term as:

> Function: to transmit a picture captured by the camera and processed by the processing unit to another location using a radio frequency channel

> Structure: cellular mobile phone unit, or equivalents thereof

A122.

For "means for processing and for storing," the parties disputed whether the structure should be limited to the disclosed processing and memory components dedicated to the camera unit.  A124.  Because claim 73 recites a "camera unit compris[ing] … means for processing and for storing," Apple argued that the corresponding structure includes processing and memory circuits dedicated to camera operations (i.e., microprocessor 23 and memories 24 of Figure 5) and excludes the general-purpose, system-level processor and memories outside the camera unit (i.e., central processor 4 and memories 13).  A5326-28.



**'078 Patent, Figures 3 and 5 (A21063-64) (annotated)**

MobileMedia argued this term should not be limited to components dedicated to camera operations.  A2129-32.  The district court agreed with MobileMedia, finding that "means for processing and for storing" may cover any "image processing unit and memory unit," including a general-purpose memory unit.  A123-24.  The court construed the term as:

> Function: to process an image captured by the camera unit and to store at least a portion of the processed image information in said at least one memory unit of said camera unit for later recall
>
> Structure: the image processing unit and memory unit, or equivalents thereof

A122.

### 3.    Accused Products

The Apple products accused of infringing the '078 Patent include the iPhone 3G, iPhone 3GS, and iPhone 4.  Each includes at least one built-in camera.



**iPhone 4**
**(A55925) (annotated)**

**iPhone 3GS**
**(A55926) (annotated)**

The accused iPhones do not include a telefax modem.[3]  During trial, MobileMedia identified the iPhone's cellular telephone transceiver as the "means … for transmitting," and argued that sending an email with an attached photograph is an infringing transmission.  A19623-25 (545:20-547:10), A19627 (549:2-7).

_____

[3] MobileMedia's counsel conceded "there is no infringement" if claim 73 requires a telefax modem.  A17841-42 (42:24-43:1).

Each accused iPhone includes an image signal processor for processing pictures, but its camera module contains no internal memory for storing captured images.  A20279-80 (1201:25-1202:6); A8914; A5970.  Rather, each accused iPhone includes a common memory for storing all data, including pictures, music, movies, software applications, emails, and the operating system.  A8843-46; A5971-72. MobileMedia identified the system-level "main memory of the iPhone" as the "means … for storing."  A19631-32 (553:24-554:4), A19630 (552:1-5).

### 4.   Prior Art

At trial, Apple presented two prior art references—Kyocera (also referred to as "Morita") and Lucent (also referred to as "Hassan").

Kyocera discloses a cellular phone with a built-in camera unit, a user interface, and a viewfinder display.  A57596 (Abstract).  As shown in Kyocera Figure 2, the portable phone has an internal digital camera with its lens located on top of the phone.  A57608.



**Kyocera, Figure 2 (A57608) (annotated)**

Figure 1 details the internal design of the Kyocera camera phone:



**Kyocera, Figure 1 (A57597) (annotated)**

As shown, Kyocera's camera unit includes an image sensor ("imaging element 2") that captures image data through "lens 1." A57601 (¶10). Under control of "control circuit 25," image data from "imaging element 2" is converted into a digital format by "A/D

converter 3," processed by the "image processing circuit 4," encoded by "encoding circuit 5," and stored in memory. *Id.* Pictures stored in Kyocera's camera unit can be transmitted "via modulation circuit 29 and sending circuit 21" of the device's mobile phone unit. A57601-02 (¶11).

Kyocera's control circuit "controls photographing operations when the release button 12 is pushed fully down" and processes image information when it "convert[s] the image of the object formed on imaging element 2 by lens 1 into a digital signal using A/D converter 3." A57600-01 (¶¶8, 10). Kyocera's "control circuit 25," thus, satisfies the "microprocessor" limitation (element [d]) of claim 73 of the '078 Patent.

At trial, Apple argued that Kyocera anticipates or renders obvious claim 73. A54. MobileMedia's expert disagreed, arguing that Kyocera's "control circuit 25" is not a microprocessor and does not "process image information," the "control circuit 25" is not "coupled" to the transmission circuits, and pictures are not stored "for later recall and processing." A56-A57.

Apple also presented an obviousness defense based on the combination of Kyocera with Lucent. Like Kyocera, Lucent discloses a

20

portable phone that includes an integrated camera unit, a "keypad 112" user interface, and an "LCD display 215." A57614-15, A57619 (3:21-33, 4:1-31). Figure 1 of Lucent, excerpted below, illustrates the device.



**Lucent, Figure 1 (A57614) (excerpt)**

The Lucent device includes a microprocessor that controls camera operations and processes pictures to "enhance presentability." A57619 (3:21-29, 3:47-50). The Lucent "digital signal processor" is illustrated as "Micro-Controller (DSP) 205" in Figure 2. A57615, A57619 (3:27-30).



**Lucent, Figure 2 (A57615) (annotated)**

The Lucent device transmits captured pictures wirelessly by facsimile using the "built in cellular telephone" and "fax modem 240." A57618 (2:4-5, 2:61-66), A57620 (5:7-9, 5:26-47). Lucent's microprocessor is coupled to the transmission components (e.g., 219, 240, and 130) through a system bus. A57615.

Lucent's camera unit includes a "camera lens 201," an image sensor ("CCD 203"), a processing circuit ("CCD conversion, timing and control 204"), and "RAM 207" memory for storing captured pictures that can be recalled later for processing and transmission. A57619 (3:21-67, 4:32-42), A57615, A57620 (5:39-44, 6:50-62).

MobileMedia did not dispute that Kyocera and Lucent, together, disclose all elements of claim 73. The sole dispute was whether a person of ordinary skill in the art would "have been able to combine the microprocessor disclosed in Lucent with the disclosure of Kyocera." A57, A59.

Apple's expert, Dr. Jack Grimes, an expert in microprocessors and imaging devices, testified that a person of ordinary skill in the art would have been motivated to combine Kyocera and Lucent because:

> (1) they are in the same field and share the same goal;
>
> (2) Lucent discloses a camera phone controlled by an off-the-shelf microprocessor;
>
> (3) a person of ordinary skill would have understood the benefits taught by Lucent of using a microprocessor to process image data and improve picture quality; and
>
> (4) a person of ordinary skill would have known about the cost advantages of using an embedded microprocessor in an electronic device.

A55-56.

MobileMedia's expert argued that one of ordinary skill "would not have been able" to combine Lucent's microprocessor with Kyocera "due to the complexity and sophistication of software and hardware integration and development." A57. The '078 Patent, however,

discloses using a standard "low power RISC processor" and provides no description of how to integrate it into the phone, implying that a person of ordinary skill in the art would understand how to use such a common component. A21066 (2:39-48). Indeed, MobileMedia's expert conceded that by the date of the invention, microprocessors were "nothing new" and "to simply stick a microprocessor in [a device] … is no big deal." A20465 (1387:19-22).

The jury found that Kyocera does not anticipate or render obvious claim 73 and the Kyocera-Lucent combination does not render claim 73 obvious. A18605-12.

Following trial, the district court denied JMOL of invalidity based on Kyocera and Lucent. A59. The court found "there was no material dispute at trial that Kyocera and Lucent, together, disclose all limitations of claim 73. Rather, the dispute related to whether one of ordinary skill would have found it obvious to combine the two references." *Id*.

### B.    '068 Patent

#### 1.    Alleged Invention And Asserted Claim 23

The '068 Patent is directed to a "communications terminal device" that displays call handling options in response to a user performing an

operation.  A32744 (13:1-2).  Examples of call handling options, which the patent refers to as "processing items," including "hold" and "disconnect."  A32740 (6:14-30).

The GSM standard included a call handling method that required a user to memorize key-combinations for each call handling option. A32738 (1:29-67).  For example, when connected to one call and receiving an incoming second call, a user could press "1" then "Send" to accept the new call and hang up the active call.  *Id*.  According to the '068 specification, the shortcoming of the GSM approach was that the key-combinations corresponded to different options in different contexts.  A32738 (1:29-67), A32740 (5:63-6:2), A32741 (8:34-40); A19683 (605:8-19).

The '068 Patent purports to improve call handling by displaying the processing items in a menu on the terminal device's screen.  A32738 (2:33-49), A32732, A32734-37 (Figs. 6, 8-11).  The specification discloses alternatives for when to display the processing items and how to effectively format them.  For example, the specification describes displaying processing items either:  automatically, such as whenever a call is incoming (see Figure 9 below), or in response to user action, such

25

as when the user presses a key (see Figure 10 below).  A32741 (7:33-37),

A32743 (12:42-44) (automatic); A32743 (12:45-52), A32744 (14:19-38)

(user action).





**'068 Patent, Figure 9**
**(A32735) (annotated)**

**'068 Patent, Figure 10**
**(A32736) (annotated)**

As an alternative to pressing a "key," the specification and claims

disclose that the user can perform a "predetermined selection operation"

to display the processing items.  For example, Figure 11 illustrates

processing items displayed in response to user performing an operation

comprising pressing the "call control key," then scrolling a jog dial

down, and then clicking in on the jog dial.  A32744 (14:19-35).



**'068 Patent, Figures 11A-11D (A32737) (annotated)**

The specification describes two ways to format the display of processing items: a "list" format (Figure 11D below) and a "matrix" format (Figure 10C below). A32740 (5:57-60, 6:14-17), A32742(10:51-53), A32745 (15:53-61); A32741(8:65-9:2), A32742 (10:48-50), A32744 (13:66-14:1) (matrix); A32745(16:9-13) (describing all embodiments as either "list-displayed, or arranged and displayed in a matrix").

27



**'068 Patent, Figure 11D
(A32737) (annotated)**



**'068 Patent, Figure 10C
(A32736) (annotated)**

Claim 23 recites a method for handling calls by, among other steps, displaying available processing items in a list format in response to a user performing "a single predetermined selection operation":

> 23. A communicating method for controlling a connecting state of a call into a desired connecting state upon a predetermined operation by a user, comprising the steps of:
>
> *[a]* displaying processing items available to the user relative to the call on a display;
>
> *[b]* selecting and determining a desired processing item out of said processing items displayed on said display by the user operating an input unit; and
>
> *[c]* controlling the processing items being displayed on said display and controlling the call into a connecting state corresponding to the processing item selected and determined by the operation of said input unit by the user,
>
>> *[c1]* wherein said step of controlling the processing items includes displaying said processing items on

28

said display ***when only a single predetermined selection operation*** is made by the user,

*[c2]* wherein said step of controlling the processing items includes ***listing said processing items*** available to the call on said display for each call.

A32751 (4:17-37) (emphasis added).

MobileMedia also asserted at trial claim 24, which recites essentially the same method for handling calls except the processing items are displayed in response to a user performing "a predetermined selection operation," rather than "only a single predetermined selection operation." A32751. (4:37-61).

### 2.    District Court's Construction Of "Listing Said Processing Items"

As described above, the '068 Patent sought to improve call handling by effectively formatting the display of processing items. To this end, the specification discloses a "list" format and a "matrix" format.    A32740 (5:57-60, 6:14-17), A32742(10:51-53), A32745 (15:53-61); A32741(8:65-9:2), A32742 (10:48-50), A32744 (13:66-14:1) (matrix); A32745(16:9-13) (describing all embodiments as either "list-displayed, or arranged and displayed in a matrix").Similarly, the '068 Patent claims recite:  "listing said processing items on said display" (or a variation thereof) (claims 3-5, 7-9, 12-14, 23-25, 26, 35-37, 39-41, 44-46)

or "display[ing] a combination of processings" (claims 6, 15, 38, 42, 47).
A32727-48, A32749-53.

Apple proposed that "listing said processing items" be construed
as "a series of processing items displayed one after the other." A1638;
A5316-17. Apple relied on the specification's and claims' express
distinction between a list and a matrix, and technical and non-technical
dictionaries. A5545, *IEEE Standard Dictionary of Electrical and
Electronics Terms* (1996) ("an ordered single-dimensioned set of data");
A2198-2201, *Webster's Third New International Dictionary* ("a simple
series of words or numerals").

MobileMedia proposed a broader construction of the "listing" term
as "grouping processing items together." A1638; A2120. MobileMedia
relied on the use of the word "liste" during the 14th to 17th Century, in
France, to mean "Group of people, roster," according to a dictionary
published six years after the '068 Patent's priority date. A2120; A5316-
17.

Apple moved for summary judgment of non-infringement on the
grounds the accused iPhones do not use the claimed "listing" format
under either parties' proposed construction or the term's plain and

30

ordinary meaning. A5417-19. MobileMedia argued "a genuine factual dispute exists" because "MobileMedia's expert disagrees" with Apple. A8288-89.

The district court construed "listing said processing items" as "the processing items are grouped together in an orderly fashion." A91. Based on this erroneous construction, the court denied Apple's motion, stating "the icons [on Apple iPhones] are arranged in an orderly fashion and meet the 'list' limitation, as construed." A94.

### 3.    Accused Products

Apple products accused of infringing the '068 Patent include the iPhone 3G, iPhone 3GS, and iPhone 4. The parties do not dispute the functionality or appearance of the iPhone's call-handling user interface. A20599 (1521:13-14) (MobileMedia's counsel stating, "there's no dispute how the iPhone works, not one").

When an iPhone is connected to a call and receives a notification of an incoming second call, it displays the CallWaiting Display User Interface ("UI") shown below on the left. *See* A19934-38 (856:6-860:23), A20000-06 (922:22-928:22).

31



**CallWaiting Display UI
(A5409) (annotated)**

**MultipleCallConnected UI
(A5410)**

The CallWaiting Display UI (above left) shows processing items to handle the calls—icons to "Ignore," "Hold Call + Answer," and "End Call + Answer." *Id.* When the user taps the "Hold Call + Answer" icon, the iPhone and network exchange requests and notifications to answer the incoming second call and hold the first call. *Id.* If successful, the iPhone displays the MultipleCallConnected UI (above right). *Id.* This UI displays processing items for the new call connection state—icons to "Merge Calls," Swap," or "End"—as well as icons that are not processing items, such as "Mute," "Keypad," "Speaker," and "Contacts." *Id.*

MobileMedia asserted that tapping the processing item "Hold Call + Answer" is a "predetermined selection operation" that causes the

iPhone to display the accused "processing items"—the "Merge Calls," "Swap," and "End" icons.  A19690-97 (612:7-619:23); A8284.  MobileMedia's expert called the display of these icons a "six square list of options."  A5660 (¶185), A5666 (¶209).

### 4.    Prior Art

Apple argued claims 23 and 24 of the '068 Patent are anticipated or rendered obvious by Bayless.  Bayless discloses a "graphical user interface" on a computer with "telephony services."  A57007.  MobileMedia conceded that Bayless discloses all limitations of the claims, including displaying a "list" of processing items, except one— displaying the processing items in response to "only a single" predetermined selection operation.  A20495-96 (1417:18-1418:1), A20511 (1433:15-19); *see also* A38.

As shown in Figure 41 below, Bayless discloses displaying processing items in a "Make & Answer Calls" window.



**Bayless, Figure 41 (A57034) (annotated)**

As shown in Figure 42 below, Bayless also discloses a settings option to "open" or display the "Make & Answer Calls" window when a key, referred to as a "Hotkey," is pressed. A57035; A20019-21 (941:23-943:23).



**Bayless, Figure 42 (A57035) (annotated)**

By clicking on the down arrows in the two rectangular boxes under the "Hotkey is pressed" option, the user could select which key or keys would comprise the "Hotkey." A20022-23 (941:23-945:22), A20025-26 (947:19-960:25), A20043-45 (965:14-967:10), A20126 (1048:6-18). For example, if the Hotkey comprised the Ctrl and 0 keys, as shown in Figure 42, the user could press Ctrl and 0 on the computer's keyboard to display the Make & Answer Calls window. *See id.*

In reexamination, the PTO initially rejected all '068 Patent claims because Bayless teaches pressing a "key" to display the processing items. A43374-402. In response, MobileMedia amended claims reciting pressing a "key" to require pressing "only a single" key and argued that Bayless fails to teach "pressing of a single key." A43420, A43426, A43439-41. MobileMedia similarly amended claims (including claim 23) that required the user to perform a "predetermined selection

35

operation" to require the user perform "only a single predetermined selection operation."[4]  But MobileMedia did not argue that Bayless fails to teach performing a single predetermined selection operation, instead relying entirely on its argument that Bayless fails to teach "pressing of a single key."  MobileMedia asserted that this argument, made in connection with claims reciting pressing a "key," applies "with equal force" to claims reciting performing a single predetermined selection operation.  *Id.*  The PTO then confirmed all claims, including those reciting "only a single predetermined selection operation," even though the PTO had expressly found that Bayless discloses "***the operation*** of [pressing] two keys."  A43448 (emphasis added).

At trial, MobileMedia asserted claims 23 and 24, both of which recite the user performing a "predetermined selection operation" to cause the display of processing items.

Apple's expert explained that Bayless teaches the limitation of the user performing "only single predetermined selection operation," i.e.,

---

[4] MobileMedia failed to add the "only a single" limitation to claim 24. A43426.

pressing the user-defined Hotkey, to cause the display of processing items in the "Make & Answer Calls" window.  A20022-23 (941:23-945:22), A20025-26 (947:19-960:25), A20043-45 (965:14-967:10), A20126 (1048:6-18).  He further explained that this is true even if a "single predetermined selection operation" is limited to pressing one key, because the difference between using one key and a combination of two keys was trivial and obvious.  Moreover, the alleged distinction between pressing one and two keys is irrelevant because claim 23 recites performing a "single predetermined selection operation," not pressing only one "key."  *See id*. The jury did not find claim 23 or 24 invalid.  A18605-12.

Apple moved for JMOL that claims 23 and 24 are invalid.  A18714-16, A18717-66.  MobileMedia again argued the claims are valid because Bayless fails to teach displaying processing items in response to pressing a single key, a limitation not recited by the asserted claims or any construction of their terms.   A20495-96 (1417:18-1418:1), A20511-13 (1433:15-1435:14).  Because claim 24 does not include the "only a single" limitation (which is in claim 23), the district court granted JMOL that claim 24 is invalid.  A43-46.  The district court, however,

denied the motion with respect to claim 23.  The court found Apple's contention that "operation" is not limited to pressing a single key was an untimely claim construction argument, even though Apple's position was based on "operation's" plain and ordinary meaning.  A40-41.

## SUMMARY OF ARGUMENT

The district court failed to limit two means-plus-function terms in claim 73 of the '078 Patent to the corresponding disclosed structures. Because the jury relied on these constructions in reaching its infringement verdict, the judgment must be reversed.

First, the court incorrectly construed "means ... for transmitting" to include any "cellular mobile phone unit" capable of "transmit[ting] a picture captured by the camera and processed by the processing unit to another location using a radio frequency signal."  This construction is flawed because the '078 Patent discloses only one structure linked to this function: a telefax modem interfaced to a mobile phone unit.  While the specification discusses SMS and email as other methods of "transmitting," it does so only for sending text messages and markings on a digitizer pad.  The specification never discloses these methods as a means for transmitting a camera-captured picture.  Under the proper

38

construction—which requires the transmitting of a picture by a telefax modem or equivalent—there is no dispute the iPhone does not infringe.

Second, the district court improperly construed "means for processing and for storing" in claim 73 to cover any "image processing unit and memory unit" capable of performing processing and storing functions. This construction fails to limit the term to the corresponding structures disclosed in the specification, which are dedicated processing and memory circuits within the camera unit. Under the proper construction, the iPhone does not infringe because captured images are stored in the iPhone's "main memory," not in a camera unit's dedicated memory.

The district court also erred in denying JMOL that claim 73 is invalid. Claim 73 is obvious in light of Kyocera and Lucent, two earlier camera phone patents. There is no dispute Kyocera and Lucent together disclose all elements of claim 73. The only dispute is whether a person of ordinary skill in the art would have combined them to meet one claim limitation—a "microprocessor adapted to control the operations of the camera unit in response to input signals from the user interface, and to process image information received by the camera

unit." While Kyocera does not expressly disclose a "microprocessor," it discloses a "control circuit" used to control image processing and camera operations. It would have been obvious to use a microprocessor as a "control circuit" to perform these functions. Microprocessors were ubiquitous components in electronic products at the date of the invention, and the '078 Patent specification uses a standard, commercially available microprocessor with no specialized features or implementation. Lucent, moreover, discloses a camera phone that uses a microprocessor to enhance pictures captured by the camera and control camera operations. Replacing Kyocera's "control circuit" with Lucent's microprocessor is a predictable use of a prior art element that yields no unexpected results and is not inventive.

For claim 23 of the '068 Patent, the jury relied on the district court's erroneous construction of "listing said processing items" as "the processing items are grouped together in an orderly fashion." This construction, which relies exclusively on extrinsic evidence, robs the term of an meaningful limitation and is inconsistent with the specification's use of "listing" and the doctrine of claim differentiation. Under the proper construction—"a series of processing items displayed

40

one after the other"—the iPhone does not infringe because it does not display a series of processing items one after the other.

Finally, the district court erred in denying JMOL of invalidity based on obviousness of claim 23 in view of Bayless. MobileMedia conceded Bayless discloses every aspect of claim 23 except the user performing "only a single predetermined selection operation" to cause the display of processing items. MobileMedia claimed Bayless requires the user to press two keys (e.g., Ctrl and 0) instead of one. In fact, Bayless does teach pressing a single key to display processing items. But even if it did not, claim 23 is obvious in view of Bayless because using one key instead of two keys was trivial and obvious at the time of the claimed invention. Moreover, under any reasonable ordinary meaning, performing "only a single predetermined selection operation" is not limited to pressing a single key but includes any operation initiated by several steps, including pressing more than one key.

These legal errors require reversal of the district court's judgment of infringement and validity of claim 73 of the '078 Patent and claim 23 of the '068 Patent.

## STANDARD OF REVIEW

Apple appeals the district court's judgment of infringement as based on incorrect claim constructions.  Claim construction is a question of law subject to this Court's de novo review.  *Cybor Corp. v. FAS Techs., Inc.*, 138 F.3d 1448, 1456 (Fed. Cir. 1998) (en banc).  A judgment based on an incorrect claim construction must be vacated.  *August Tech. Corp. v. Camtek, Ltd.*, 655 F.3d 1278, 1286 (Fed. Cir. 2011).  When the record leaves no genuine issues of material fact pertaining to infringement, this Court can instruct the district court to enter judgment of non-infringement based on a change in claim construction. *Electro Scientific Indus., Inc. v. Dynamic Details, Inc.*, 307 F.3d 1343, 1350 (Fed. Cir. 2002); *Accent Packaging, Inc. v. Leggett & Platt, Inc.*, 707 F.3d 1318, 1330 (Fed. Cir. 2013).

Apple also appeals the district court's denial of JMOL of invalidity of claim 73 of the '078 Patent and claim 23 of the '068 Patent.  This Court reviews the denial of JMOL under the same standard of review as the trial court, applying the law of the relevant regional circuit.  *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1309 (Fed. Cir. 2009).  In the Third Circuit, JMOL is appropriate when there is a "purely legal

42

basis" requiring reversal, *Acumed LLC v. Advanced Surgical Servs., Inc.*, 561 F.3d 199, 211 (3d Cir. 2009), and it is mandated "where the facts and the law will reasonably support only one conclusion," *Northview Motors, Inc. v. Chrysler Motors Corp.*, 227 F.3d 78, 88 (3d Cir. 2000). "On appellate review, the question of obviousness is decided de novo." *Soverain Software LLC v. Newegg Inc.*, 705 F.3d 1333, 1336 (Fed. Cir. 2013).

## ARGUMENT

### I.    '078 Patent, Claim 73

#### A.    The Infringement Judgment Must Be Reversed Because The District Court Improperly Construed "Means … For Transmitting"

"Under § 112, ¶ 6, a means-plus-function claim 'shall be construed to cover the corresponding structure, material, or acts described in the specification or equivalents thereof.'" *Saffran v. Johnson & Johnson*, 712 F.3d 549, 561 (Fed. Cir. 2013) (quoting 35 U.S.C. § 112 ¶ 6). A disclosed structure is a "'corresponding' structure only if the specification or prosecution history clearly links or associates that structure to the function recited in the claim." *B. Braun Med., Inc. v. Abbott Labs.*, 124 F.3d 1419 , 1424 (Fed. Cir. 1997). The duty to clearly link a structure to the function is the "*quid pro quo* for the convenience

43

of employing § 112, P 6." *Id.* Structures "capable of performing the function recited"—even if disclosed in the specification—must be excluded from the claim construction when "there is no clear link or association between the disclosed structures and the function recited in the means-plus-function claim limitation." *Medtronic, Inc. v. Advanced Cardiovascular Sys.*, 248 F.3d 1303, 1312 (Fed. Cir. 2001).

The district court's construction of "means … for transmitting" as a "cellular mobile phone unit, or equivalents thereof" (A122) in claim 73 is incorrect because it is not limited to the only structure clearly linked to the claimed function—a telefax modem interfaced to a mobile phone unit. Under the proper construction, there is no dispute the accused products do not infringe.

### 1.    The Correct Construction Of "Means … For Transmitting" Requires A Telefax Modem

A telefax modem interfaced to a mobile phone unit is the ***only*** structure disclosed in the '078 Patent specification for transmitting a picture captured by the camera unit.

The disclosed device stores a picture captured by the camera unit in "the form of a bitmap" that may be "used in facsimile/telefax transmission." A21068 (5:59-64). To transmit the picture through a

radio frequency channel, a user initiates a "telefax application" causing the picture to be "transmitted as a bitmap and a telefax massage from the mobile organiser's memory unit via cellular mobile phone unit 17 comprising a telefax modem." A21068 (5:65-6:6).  The disclosed device's "data transmission properties are based on an analogue modem and the GSM data interface." A21067 (3:47-49).  Figure 3 illustrates a transmission block including both a "cellular mobile telephone *and modem*." A21063 (emphasis added).



**'078 Patent, Figure 3 (A21063) (annotated)**

Thus, the correct construction of "means … for transmitting" must be limited to a telefax modem interfaced to a mobile phone unit and its

45

equivalents.  *See J & M Corp. v. Harley-Davidson, Inc.*, 269 F.3d 1360, 1367 (Fed. Cir. 2001).

Construing this same term of the '078 Patent in another MobileMedia lawsuit, a different district court correctly concluded the proper construction requires a modem.  *MobileMedia Ideas LLC v. HTC Corp.*, No. 2:10-cv-00112-JRG, slip no. at 30 (E.D. Tex. Dec. 10, 2012) (included in the attached Addendum per Fed. R. App. P. 32.1(b)).  The court in *HTC* identified the corresponding structure of "means … for transmitting" as "a modem interfaced to a cellular mobile phone and equivalents thereof," explaining "the corresponding structure is described as including a modem."  *Id.*[5]

---

[5] The *HTC* court's construction does not require a ***telefax*** modem.  *Id.* at 30.  Apple does not agree with this part of the construction because a telefax modem is the only type of modem linked to the claimed function. A21068 (6:6).  However, Apple's accused products do not transmit data using any modem and thus do not infringe claim 73 under the *HTC* court's construction.  A19623-25 (545:20-547:10).

## 2.    The District Court Erred In Construing "Means ... For Transmitting" To Encompass Transmission Mechanisms Not Linked To The Claimed Function

MobileMedia argued for, and the district court adopted, a broad construction that improperly encompasses transmission mechanisms—including SMS and email—that are not linked by the specification to the claimed function.  A8211-12; A17845 (46:19-23).  This construction is incorrect because structures disclosed in the specification "capable of performing the function recited" cannot be included in a means-plus-function construction if "there is no clear link or association between the disclosed structures and the function recited in the means-plus-function claim limitation."  *Medtronic,* 248 F.3d at 1312.  In *Medtronic,* this Court held that means for "connecting adjacent elements together" were limited to "helical winding," even though other disclosed structures—"straight wire, hooks, and sutures"—are "definitely capable of ... connecting adjacent elements together."  *Id.*; *see also Fonar Corp. v. General Elec. Co.*, 107 F.3d 1543, 1551 (Fed. Cir. 1997) (means-plus-function term limited to a specific waveform despite the specification's disclosure "that other waveforms may be used"); *Braun Med.*, 124 F.3d at 1425 (excluding from construction disclosed "valve seat" for "lack of

47

association between the valve seat and the recited function"). Thus, the proper construction of "means … for transmitting" must be limited to the disclosed modem structure and cannot encompass transmission mechanisms not clearly linked to the claimed function. *Saffran*, 712 F.3d at 563.

SMS and email are not clearly linked to the claimed function of transmitting pictures captured by the camera. First, SMS is not—and cannot be—linked to the function of transmitting a picture. The '078 Patent discloses sending text messages through SMS, a communications protocol under the GSM standard. A21069 (8:5-15); A24226-326. The SMS specification—part of the '078 Patent's file history—explains each SMS message may only contain "up to 160 characters." A24269, A24321; *see also TruePosition, Inc. v. Andrew Corp.*, 507 F. Supp. 2d 447, 457 (D. Del. 2007) ("Text messaging … is the common term for sending messages of about 160 characters or fewer from cellular telephones using the Short Message Service (or 'SMS')."). The SMS specification defines a specific set of text characters that may be sent through SMS. A24320.

48

The SMS transmission mechanism disclosed in the '078 Patent—unlike modern-day messaging services—cannot transmit a picture captured by the camera. A24226-326. MobileMedia's counsel erroneously argued during the claim construction hearing that "[t]he user can transmit messages over this SMS, sort of like text messages, things like that, which you can attach pictures to." A17845 (46:21-23). The SMS specification, however, does not allow for transmission of any pictures. A24226-326. MobileMedia misleadingly cited the '078 Patent's disclosure of sending through SMS a "message … read by a data collection device such as a camera unit." A17845-46 (46:24-4:73); A21070 (8:10-12). But the '078 Patent discloses that this message is a text message extracted from a picture of a handwritten message using the disclosed character recognition software, not the picture itself. A21068-69 (5:53-58, 8:5-14). Nowhere does the '078 Patent clearly link SMS to the function of transmitting a camera-captured picture, and SMS cannot perform that function. A24226-326.

Second, the '078 Patent does not disclose using email to transmit a picture captured by the camera. The '078 Patent links email transmission of images only with input from the digitizer pad:

49

The bitmap images or converted ASCII texts/graphics transferred to the memory ***from digitizer pad 29*** of notebook computer 27 can be later forwarded via telefax or electronic mail services, as disclosed above in the description of the invention. …

When transmitting electronic mail or telefax messages, the user can ***digitise the message*** on the display of the notebook computer and to simply select the recipient information from the phone list.

A21069 (7:37-41, 7:54-57) (emphasis added).  The PTO correctly recognized that email is not linked to the transmission of camera-captured pictures, stating: "Although [the '078 Patent] teaches the wireless transmission of electronic mail, the user 'digiti[zes] ... the message on the display of the notebook computer,' thus electronic mail does not involve a camera image."  A28672.

Notwithstanding the specification's disclosure of a telefax modem as the exclusive structure for transmitting pictures captured by the camera unit, MobileMedia asserted that claim differentiation principles justify its overbroad construction.  A2129.  MobileMedia argued that because dependent claim 4 limits claim 1's "means for transmitting" to a "telefax modem," the scope of "means for transmitting" must be broader than a telefax modem.  *Id.*

50

MobileMedia's argument fails because this Court has "long held that a patentee cannot rely on claim differentiation to broaden a means-plus-function limitation beyond those structures specifically disclosed in the specification." *Saffran*, 712 F.3d at 563. "A means-plus-function limitation is not made open-ended by the presence of another claim specifically claiming the disclosed structure which underlies the means clause or an equivalent of that structure." *Laitram Corp. v. Rexnord, Inc.*, 939 F.2d 1533, 1538 (Fed. Cir. 1991). In *Laitram*, this Court limited "means for joining" to a cross member even though a dependent claim specifically claims a "cross member." *Id.* Likewise, claim differentiation cannot expand the scope of "means … for transmitting" beyond the structure required for facsimile transmission.

Moreover, claim differentiation—which weighs against a claim construction that renders two claims identical in scope—is inapplicable to claims 4 and 73 because they are not "otherwise identical." *Andersen Corp. v. Fiber Composites, LLC*, 474 F.3d 1361, 1370 (Fed. Cir. 2007). Claim 4 depends from claim 1, which recites limitations such as "a housing" and "peripheral device interfaces" that are not found in claim 73. A21069-73.

The '078 Patent specification links only one structure—a telefax modem interfaced to a mobile phone unit—to the function of transmitting a picture captured by the camera unit. A21068 (6:3-6). Thus, the corresponding structure for "means … for transmitting" requires a telefax modem.

### 3.    The Accused Products Do Not Have "Means … For Transmitting"

The district court denied Apple's non-infringement summary judgment motion under an erroneous construction of "means … for transmitting."  A124.  MobileMedia admitted claim 73 is not infringed if "means … for transmitting" requires a telefax modem, stating: "We're not going to pretend they have a telefax modem there."  A20850 (17:14-15).  In response to the district court's question whether the construction of this term is dispositive for the '078 Patent, MobileMedia's counsel responded:  "And when you ask how it affects

things, your Honor, if they get telefax modem, there is no infringement." A17841-42 (42:24-43:1).[6]

Because the proper construction of "means … for transmitting" requires a telefax modem, this Court should reverse the infringement judgment and remand to the district court to enter judgment of non-infringement or set a new trial. *See, e.g.*, *Packaging*, 707 F.3d at 1330.

## B.    The Infringement Judgment Must Be Reversed Because The District Court Improperly Construed "Means For Processing And For Storing"

### 1.    The Correct Construction Must Be Limited To The Disclosed Processing And Memory Components Within The Camera Unit That Are Dedicated To Camera Functions

Claim 73 recites a "camera unit" comprising, among other things, "means for processing and for storing at least a portion of the image information obtained by the camera unit." Because the "means for processing and for storing" limitation is a component of the camera unit, its corresponding structure must be limited to the disclosed processing and memory circuits within the camera unit. *See Saffran*,

---

[6] MobileMedia conceded that it "does not allege doctrine of equivalents with respect to [the '078] patent." A8302.

712 F.3d at 563 (construction limited to structures "specifically disclosed and tied to that [claimed] function.")

Claim 73 recites two separate processing elements—a "microprocessor" (element [d]) and a "camera unit compris[ing] … means for processing" (element [f3]).  As shown below in Figures 3 and 5, the "microprocessor" (element [d]) corresponds to the system-level central processor 4.  The "means for processing" within the camera unit (element [f3]) corresponds to the camera unit's dedicated microprocessor 23.



'078 Patent, Figures 3 and 5 (A21063-64) (annotated)

The specification explains that when a picture is captured, image data "is transferred to image processing unit 14c and *through its microprocessor 23* to memory unit 24, such as RAM."  A21067 (4:51-54) (emphasis added).  When a user views a picture, "[t]he desired

image information is read from memory unit 24 *by means of microprocessor 23*." A21067 (4:57-62) (emphasis added). Thus, the structure linked to "means for processing" is the camera unit's processor 23, not the device's general-purpose central processor 4. *See Medtronic*, 248 F.3d at 1312 (excluding from construction structures unlinked to claimed function).

The '078 Patent also discloses multiple memories, including a system-level "memory unit 13" and the camera unit's own "memory units 24." A21067-68 (4:37-41, 5:16-20). Like "means for processing," the "means … for storing at least a portion of the image information obtained by the camera unit" is claimed as a component of the "camera unit." Accordingly, "means … for storing" is linked to the camera unit memory. Moreover, because the function of "means … for storing" is to store image data "in at least one memory unit *of [the] camera unit* for later recall" (A122) (emphasis added), the structure linked to that function includes only the camera unit memory, and cannot encompass the system-level memory.

Within the camera unit's "memory units 24," there are two types of memories—memory storing captured images ("'volatile memory units'

such as DRAM and SRAM units used as scratch pad storages") and memory storing program data ("non-volatile memory units, such as FLASH and EPROM units which are used as base program memories"). A21067 (4:37-41). The structure corresponding to the claimed function of "means … for storing at least a portion of the image inform" must be limited to a memory component within the camera unit dedicated to storing images.

The '078 Patent file history supports Apple's position that "means for processing and for storing" should be limited to the camera unit's dedicated processing and memory circuits. During prosecution, the applicant emphasized the advantages of having a processor and memories dedicated to the camera unit that were separate from the system level processor and memories. The applicant noted the disclosed camera unit, which includes a separate processor and memories, allows the camera unit to internally store and execute software such an optical character recognition ("OCR") program. A21573-74. The applicant claimed this feature was inventive:

> It should also be noted that the OCR function described in the instant patent application can be located in the camera unit 14 itself. … Thus it can be argued that the functionality of the

camera card, as described in the instant patent application, is in itself inventive.

*Id.*  This "inventive" feature is possible only if the camera unit has its own dedicated processor and memory.

## 2.    The District Court Erred In Construing "Means For Processing And For Storing" To Encompass Structures Not Linked To The Claimed Function

In construing "means for processing and for storing" as "the image processing unit and memory unit," the district court failed to limit the scope of the term to structures "specifically disclosed and tied to [the claimed] function." *Saffran*, 712 F.3d at 563.  The district court's construction is wrong for at least two reasons.

First, the district court's construction violates the rule that the scope of a means-plus-function term cannot encompass structures unlinked to the claimed function.  *Medtronic*, 248 F.3d at 1312.  The district court construed the function of "means … for storing" as "to store … image information in at least one memory unit of [the] camera unit."  A122.  The only disclosed structure clearly linked to this function is the camera unit memories 24, as shown in Figure 5.  A21064.  The system-level memories 13, shown in Figure 3, is not part of the camera unit 14 and is not linked to the claimed function.  A21063.

57



**'078 Patent, Figures 3 and 5 (A21063-64) (annotated)**

The district court's construction is incorrect because it broadly encompasses a wide range of memory devices, including the system-level memories 13, that are not clearly linked to the claimed function.

Second, the district court's construction violates the "fundamental rule" that "claims must be construed so as to be consistent with the specification." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1316 (Fed. Cir. 2005). The '078 Patent specification states, "Image processing unit 14c **comprises** microprocessor 23 and a number of memory units 24." A21067 (4:29-31) (emphasis added). As shown in Figure 5, the image processing unit 14c is a component of the camera unit. A21064.

58



**'078 Patent, Figure 5 (A21064) (annotated)**

The specification further discloses that pictures are stored in memories 24 within the image processing unit 14c.  A21067 (4:37-45).  In contrast, the district court's construction—"the image processing unit ***and memory unit***"—suggests that pictures are stored outside of the image processing unit 14c, which is inconsistent with the patent disclosure.

### 3.  The Accused Products Do Not Have "Means For Processing And For Storing" As Required By The '078 Patent

The district court denied Apple's non-infringement summary judgment motion because the accused iPhones "as a whole, have flash memory," even though they do not include a camera unit having internal memory dedicated to storing camera images.  A123-24.

At trial, MobileMedia's expert admitted that captured pictures are "stored … in the main memory of the iPhone."  A19631-32 (553:24-

554:4).  This "main memory" stores emails, music, movies, software

applications, and the operating system, in addition to camera-captured

images.  A5971-72.  The main memory, therefore, corresponds to the

system-level memory unit 13 of the '078 Patent, not the camera unit's

dedicated memories 24.  Accordingly, Apple requests that the Court

reverse the infringement judgment, and remand to the district court to

enter judgment of non-infringement.

### C.    The District Court Erred In Denying JMOL Of Invalidity Based On Obviousness

"The ultimate judgment of obviousness is a legal determination."

*KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 427 (2007).  "Obviousness is

a question of law based on underlying facts."  *Soverain Software*, 705

F.3d at 1336 (listing factual considerations under *Graham v. John

Deere Co.*, 383 U.S. 1 (1966)).    When the underlying facts are

undisputed—as they are in this case—this Court should review the

question of obviousness de novo without deference to the jury verdict.

*Id.* at 1336.

The sole issue in dispute with respect to Apple's obviousness

challenge to the '078 Patent is whether it would have been obvious to

combine Kyocera and Lucent.  A59.  The district court erred by

60

improperly deferring to the jury's verdict without rendering its own conclusion on this legal question of obviousness. *Id*. As shown below, the undisputed facts demonstrate that the only correct conclusion is that claim 73 is invalid.

### 1.    The Facts Underlying Apple's Obviousness Defense Are Undisputed

There are no factual disputes underlying the *Graham* obviousness analysis for the Kyocera-Lucent combination. *See Soverain Software*, 705 F.3d at 1336 ("The *Graham* factors are (1) the scope and content of the prior art, (2) the difference between the prior art and the claimed invention, (3) the level of ordinary skill in the field of the invention, and (4) any relevant objective considerations.").

The district court found "there was no material dispute at trial that Kyocera and Lucent, together, disclose all limitations of claim 73." A59. Lucent discloses all claim elements allegedly missing from Kyocera—a microprocessor that processes image data and is coupled to

61

the transmission circuits, and the storing of image data for later recall and processing.  A57619 (3:47-67), A57620 (5:39-44), A57615 (Fig. 2).[7]

Experts for both parties agreed on the level of ordinary skill in the art.  A20464 (1386:12-18 (testimony by MobileMedia's expert)); A20285-86 (1207:19-1208:14 (testimony by Apple's expert)).

MobileMedia did not present any evidence of secondary considerations of non-obviousness, and the '078 Patent lead inventor admitted he was unaware of facts supporting such considerations.  A19477-78 (399:13-400:6).  With no evidence in the record, the district court did not instruct the jury to consider secondary considerations of non-obviousness.  A20775-78 (1697:2-1700:13).

---

[7] Even if this Court reverses the district court's claim constructions, it is still undisputed that Kyocera and Lucent disclose all limitations of claim 73.  In summary judgment briefing, MobileMedia did not dispute that, under Apple's constructions, Lucent discloses "means for transmitting" and Kyocera discloses "means … for processing and storing."  A3864-67 (citing Lucent's "Fax Interface 219 and Fax Modem 240" and Kyocera's "image processing circuit 4" and "memory card 10"); A6191-98.

Apple's expert identified several reasons that would have motivated a skilled person to combine Kyocera and Lucent, including compatibility of the technology, commercial availability of Lucent's microprocessor, and performance and cost benefits of the combination. A55-A56 (citing A20329-30 (1251:3-1252:16); A20352-53 (1274:24-1275:5), A20353-54 (1275:6-1276:11)).  MobileMedia did not contest these reasons.  Instead, it relied solely on conclusory expert testimony that the combination of the Lucent microprocessor with the Kyocera camera phone would have been too complex to implement.  A57 (citing A20463-66 (1385:25-1388:13)).  For the reasons set forth below, this testimony is legally insufficient to support a finding of non-obviousness.

### 2.    Claim 73 Is Obvious As A Matter Of Law

"[W]hen a patent simply arranges old elements with each performing the same function it had been known to perform and yields no more than one would expect from such an arrangement, the combination is obvious." *KSR*, 550 U.S. at 417.  Because claim 73 claims a simple combination of known elements with no unexpected results, it is obvious.

Replacing Kyocera's control circuit with Lucent's microprocessor (or, for that matter, any microprocessor) does not result in a patentable invention.[8]  By the priority date of the '078 Patent, microprocessors were ubiquitous in portable electronic devices because they lowered manufacturing cost by replacing expensive custom-designed circuits with a general purpose, programmable circuit.  A20329 (1251:3-6); A20254 (1176:6-25); A20345-46 (1267:1-1268:9).  The cost and performance advantages of microprocessors were well understood in the art.  *Id.*  Indeed, the '078 Patent describes using a "low power RISC processor" but does not disclose any specific advantages or implementation details of that processor.   A21066 (2:39-48).  Such disclosure was unnecessary because "a specification need not disclose what is well known in the art."  *Genentech, Inc. v. Novo Nordisk A/S,* 108 F.3d 1361, 1366 (Fed. Cir. 1997).  The '078 Patent correctly assumes that a person of ordinary skill would know how to implement a

---

[8] While Apple argued at trial (and continues to maintain) that Kyocera alone renders claim 73 obvious, Apple did not challenge the jury's finding of non-obviousness based on Kyocera alone in its JMOL motion and does not challenge that finding on appeal.

"low power RISC processor" and integrate it into a camera phone. *Id*.

MobileMedia's expert similarly conceded that a microprocessor "was

nothing new" and using a microprocessor was "no big deal." A20465

(1387:19-22).

Modifying the Kyocera device with the Lucent microprocessor is a

"predictable use of prior art elements according to their established

functions." *KSR*, 550 U.S. at 417. Kyocera's "control circuit 25" controls

image processing and camera operations. A57600 (¶8), A57601 (¶10).

The Lucent camera phone uses a microprocessor to process output from

the image sensor and control camera functions. A57619 (3:47-50, 3:22-

27). Thus, substituting the Lucent microprocessor for the Kyocera

control circuit requires only that the Lucent microprocessor perform the

same functions as disclosed in Lucent. This modification is not

inventive because it is "a textbook case … involv[ing] a combination of

familiar elements according to known methods that does no more than

yield predictable results." *Agrizap, Inc. v. Woodstream Corp.*, 520 F.3d

1337, 1344 (Fed. Cir. 2008). The '078 Patent's lead inventor admitted

there were no "surprising results" associated with the claimed invention

(A19478 (400:1-3)), and the '078 Patent assumes the implementation

details of a microprocessor were well known. *Genentech*, 108 F.3d at 1366.

In addition, the substitution of the Lucent microprocessor for the Kyocera control circuit is obvious in light of Lucent's disclosure that its microprocessor—the "3210 chip available from AT&T"—was commercially available. A57619 (3:27-30). Apple's expert testified that the use of an off-the-shelf component would have prompted those skilled in the art to try the Lucent microprocessor and expect success from its use. A20352-53 (1274:15-1275:5). In the similar case of *Western Union Co. v. MoneyGram Payment Systems*, this Court found the asserted claims obvious because the "patented invention simply replaced the fax machine in the [prior art] with an off-the-shelf keypad—a well-known device in the art." 626 F.3d 1361, 1368 (Fed. Cir. 2010).

Lucent provides motivations to combine the two references. First, Lucent discloses that its microprocessor performs signal processing to "enhance presentability" of captured pictures. A57619 (3:37-67); A20351-52 (1273:2-1274:9). Those skilled in the art would have recognized that modifying Kyocera with Lucent would provide the benefit of improved picture quality. *Id.* Second, Lucent discloses that

66

its microprocessor can be programmed to run programs that are similar to functions performed by the Kyocera device.  A57619 (4:43-45), A57620 (5:26-47, 6:22-42), A57610.  Apple's expert testified that those skilled in the art would have understood the cost advantages of using a programmable microprocessor for complex operations.  A56; A20345-46 (1267:1-1268:9), A20329-30 (1251:3-1252:16).  MobileMedia presented no evidence to contradict these "express motivation[s] to combine those disclosures in the prior art."  *Bayer Healthcare Pharm., Inc. v. Watson Pharm., Inc.*, 713 F.3d 1369, 1377 (Fed. Cir. 2013).

In attempting to rebut Apple's compelling evidence of obviousness, MobileMedia relied solely on Dr. Meldal's anecdotal testimony that his "students in the nineties" would have been unable to produce an embodiment that included a microprocessor, and that his current students (who he admitted have fewer than "two years of experience" required for persons of ordinary skill) would find integrating a microprocessor in a mobile phone a "significant project."  A20465-66 (1387:19-1388:13), A20466-67 (1388:24-1389:2).  But even if this argument were true (and it is not for reasons explained below), proving obviousness does not require proof that making a working embodiment

would be easy. "What matters is the objective reach of the claim. If the claim extends to what is obvious, it is invalid under § 103." *KSR*, 550 U.S. at 419.

Moreover, Dr. Meldal's testimony is contradicted by the record evidence. Dr. Meldal argued that a person of ordinary skill in the art would have been unable to "program [a microprocessor]," "put it together with the other components, and make it all work together." A20465-66 (1387:19-1388:13). But the '078 Patent does not disclose any implementation detail of the microprocessor and instead relies on the knowledge of ordinary skill. A21066 (2:39-48). By comparison, Lucent teaches the integration and programming of a microprocessor in a camera phone in greater detail than the '078 Patent. A57619 (3:21-45, 4:43-64), A57620 (5:26-6:42), A57615. A person of ordinary skill is someone "working in his shop with the prior art references—which he is presumed to know—hanging on the walls around him." *Union Carbide Corp. v. Am. Can Co.*, 724 F.2d 1567, 1576 (Fed. Cir. 1984). Such a person must be assumed to know how the integration and programming of a microprocessor in a camera phone can be accomplished from the teachings of Lucent. Dr. Meldal's opinion that a skilled person would

not know these steps requires the opposite assumption—that the person is unaware of Lucent. Thus, Dr. Meldal's testimony cannot, as a matter of law, support a finding of non-obviousness.

Accordingly, claim 73 is obvious and the district court erred in denying JMOL of invalidity.

## II.    '068 Patent, Claim 23

### A.    The Infringement Judgment Must Be Reversed Because The District Court Improperly Construed "Listing Said Processing Items"

Claim 23 of the '068 Patent requires "controlling the processing items being displayed on said display … wherein said step of controlling the processing items includes listing said processing items." A32746 (18:39-44). The term "listing said processing items" should be construed as "a series of processing items displayed one after the other." A1638; A5316-17. Under this correct construction, Apple does not infringe claim 23 as a matter of law.

### 1.    The Proper Construction Of "Listing Said Processing Items" Must Be Limited To The Disclosed "List" Format And Cannot Include The Claimed Alternative "Matrix" Format

The district court construed "listing said processing items" as "the processing items are grouped together in an orderly fashion." A91.

69

This construction fails to respect the boundaries of the claimed "listing" format as articulated in the specification and claims, and improperly subsumes the alternatively claimed "matrix" format.

First, the district court's construction is not "consistent with the specification." *Phillips*, 415 F.3d at 1316. The specification discloses two distinct formats for displaying processing items: a "list" format and a "matrix" format.

Figures 6B, 9C, and 9D illustrate the "list" format.



|  |  |
|---|---|
| "listing"<br>'068 Patent, Figure 6B<br>(A32732) | "listing" with "page-scrolling"<br>'068 Patent, Figures 9C-9D<br>(A32732) |

Figure 6B shows the "processings available to the call arrived are list-displayed on the second to fourth lines of the screen." A32740 (6:14-17); *see also* A32733 (Fig. 7). Figure 9 further illustrates that processing items for multiple calls can be list-displayed on multiple pages, which

70

"can be shifted by page scrolling." A32742 (10:51-54), A32743 (12:12-18).

Figures 8 and 10 illustrate the alternative "matrix" format. A32741-42 (8:65-9:2), A32745 (15:54-61).


**'068 Patent, Figure 8
(A32734)**


**'068 Patent, Figure 10
(A32736)**

In the matrix format, the processing items are "arrayed" in rows and columns, and the user may select a row of processing items to change the connection states for multiple calls. *See id.* The specification also describes the matrix format as "a combination of processings." A32742 (10:15-18), A32744(13:11-13).

The '068 Patent claims similarly recite the two alternative display formats: "listing said processing items" (or a slight variation thereon) or "display[ing] a combination of processings." The district court's construction fails to preserve these substantive differences between the claims, differences that must serve as a "guide in understanding the meaning of particular claim terms." *Phillips*, 415 F.3d at 1314.

71

The district court acknowledged that a distinction exists, but erred in reasoning that the "reference to 'matrix' in the specification is not technically correct, so it is a distinction without a difference." A91. The court's conclusion turned on one sentence in the specification describing the fourth embodiment: "In this case [Figure 10], as in the call control screen, a list in which processings for each call are arranged in a matrix is displayed just as the case with the second embodiment [Figure 8]." A32744 (13:1-5). This one, anomalous statement, however, cannot trump the specification's otherwise clear, deliberate, and precise description of the "list" format.

In all disclosed embodiments, the processing items are formatted as a "list" *or* as a "matrix." A32740 (6:14-28) (embodiment one: "list-displayed"), A32741 (8:65-9:2) (two: "matrix"), A32744 (10:50-53) (three: "list-displayed for each call"), A32742 (13:66-14:1) (four: "in a matrix"), A32744 (14:33-35) (five: "list-displayed"). Rather than saying the two formats are the same, the specification distinguishes each as particularly effective in different situations—preferring the "list" format when connected to one call, the "matrix" format when connected to two calls, and the "list" format with "page scrolling" when connected to more

72

than two calls.  A32741-42 (8:63-9:2), A32742 (10:48-56), A32744 (13:66-14:5), A32745 (15:54-61) ("[W]here the number of calls is increased [beyond two], it is considered that it is desirable to list-display processings … rather than arraying and displaying in a matrix.").  The district court, however, adopted a construction that conflates a "list" with a "matrix."

Second, the district court gave no justification to stray from the general rule that every limitation "must be considered meaningful." *ERBE Elektromedizin GmbH v. Canady Tech. LLC*, 629 F.3d 1278, 1286 (Fed. Cir. 2010).  Claim 23 first recites the step of "displaying processing items," then separately adds the limitation of "listing said processing items."  Interpreting "listing" as "grouping" renders the "listing" limitation superfluous because the "listing said processing items" limitation is met in every case where the "displaying processing items" limitation is met.

Moreover, the doctrine of claim differentiation imposes a presumption that the claimed "list" format must be considered meaningful.  *Phillips*, 415 F.3d at 1315.  The '068 Patent includes independent claims that do not specify any format for "displaying

73

processing items," and dependent claims that add the "list" format limitation. *See, e.g.*, A32727-48, A32749-53 (claims 3, 7, 12, 35, 39, 44). Thus, the patentee must have intended some distinction. *See Liebel-Flarsheim Co. v. Medrad, Inc.*, 358 F.3d 898, 910 (Fed. Cir. 2004) (finding the doctrine of claim differentiation "at its strongest" when a proposed construction would improperly read the limitation of a dependent claim into the claim it depends from).

Third, the only support for replacing the term "list" with the term "group" came from extrinsic evidence, and "it is improper to read [a claim] term to encompass a broader definition simply because it may be found in a dictionary." *Felix v. Am. Honda Motor Co.*, 562 F.3d 1167, 1178 (Fed. Cir. 2009).  Although MobileMedia cited *Webster's Dictionary* as "defining 'list' as 'group'" (A2120), the inclusion of the word "group" in that dictionary actually refers to the etymological origin of the word "list"—in Middle French, "liste" apparently meant "Group of people, roster."  A5316-17.  *Cf. Felix*, 562 F.3d at 1178 (discrediting "specialized meaning … inapplicable in the context").  That dictionary's actual definition confirms Apple's proposed construction by defining "list" as "a simple series of words or numerals (as the names of persons or objects)."

74

A5317; *see also IEEE Standard Dictionary of Electrical and Electronics Terms* (1996) (A5545) ("an ordered single-dimensioned set of data").

> ### 2. Under The Proper Construction, The Accused Products Do Not Practice "Listing Said Processing Items"

The district court denied Apple's infringement summary judgment motion under an erroneous construction of "listing said processing items." *See* A91. The parties do not dispute the factual question of what format the accused iPhones use to display processing items (see section II.B.2); they dispute the legal question of whether that format satisfies the claim limitation. No reasonable jury could find the iPhones practice "listing said processing items" under a proper construction. Two of the accused processing items—the "Swap" and "Merge Calls" icons—are displayed within rows and columns and thus map to positions in a 3-by-2 matrix. A5413-16. The third accused processing item—the "End" icon—is displayed in horizontal bar below the 3-by-2 matrix. *Id.* Unlike processing items in a series displayed one after the other, the iPhone's icons have no single or linear spatial relationship.

In support of its infringement theory, MobileMedia offered only its expert opinion on the ultimate conclusion—Dr. Meldal simply

75

characterized the formatting on the iPhone as a "six square list of options."  A5660 (¶185), A5666 (¶209).  As illustrated below, Dr. Meldal's conclusion cannot be reconciled with his conclusions concerning whether the prior art meets the same limitation:



| *Accused Products*<br>**Dr. Meldal: "listing"** | *Prior Art*<br>**Dr. Meldal: not "listing"** |
|---|---|
| The "Swap, Merge and End" icons are displayed as "the six square list of options." | "Sudo '003 does not disclose 'a list.'"<br><br>"Rogers '386 does not disclose 'a list.'"<br><br>"Orbitor Video does not disclose listing processing items." |

**A7255 (internal citations omitted)**

Even if a "list" could include a "matrix," the disclosed list-format and matrix-format both have processing items "displayed one after the other."  The iPhone does not display the accused processing items one after the other—the processing item of an "End" icon is in a different shape and on a separate section of the screen than the "Swap" and "Merge Calls" icons.  Moreover, unlike all embodiments in the

76

specification, the iPhone displays processing items interspersed with non-processing items, including the "Mute," "Keypad," "Speaker," and "Contacts" icons.

Under the appropriate claim construction, the district court should have granted summary judgment of non-infringement because there is no genuine dispute of material fact.  Therefore, this Court should remand with an order to the district court to enter judgment of non-infringement.  *See, e.g.*, *Accent Packaging*, 707 F.3d at 1330.

## B.    The District Court Erred In Denying JMOL Of Invalidity Based On Obviousness

Because no legally sufficient basis exists for the jury to have found claim 23 of the '068 Patent non-obvious, the district court erred in denying JMOL of invalidity.

As discussed above, Bayless teaches the display of a list of processing items when the user presses a "Hotkey."  A57034-35 (Figs. 41, 42).  In the example described in Bayless, the user simultaneously presses the Ctrl key and the 0 key.  A57035 (Fig. 42). As a result of this user operation, a list of processing items is displayed in the "Make & Answer Calls" window.

77

Apple demonstrated by clear and convincing evidence that Bayless teaches each step of claims 23 and 24. MobileMedia conceded that Bayless discloses every step but one—it argued that Bayless's Hotkey fails to disclose "only a single" predetermined selection operation. A38 ("[T]here was no dispute that Bayless at least discloses multiple predetermined selection operations.").[9] MobileMedia asserted the patentable innovation was to display processing items in response to the user pressing one key (e.g., F1) whereas Bayless requires the user to press two keys (e.g., Ctrl+0). A18767-805 (MobileMedia asserting, "Bayless taught only two-step, two-key Hotkey selection operations (Ctrl+0), quite different from the '068 Patent's 'one-step, one-key' selection operation").

The district court granted JMOL of invalidity of claim 24 on the basis that claim 24 recites "an operation," not "only a single operation" as in claim 23. A18796. The court denied JMOL of claim 23, finding

---

[9] While the parties agreed that Bayless discloses the "listing said processing items" limitation under the district court's construction, there can be no dispute that even under the proper construction, Figure 42 of Bayless illustrates processing items displayed in a "list" format.

that MobileMedia's expert testimony provided substantial evidence to support the verdict of non-obviousness. *Id.* Because no reasonably jury could find claim 23 non-obvious, even when considering the expert testimony, the district court erred in denying Apple's motion.

When the facts underlying the *Graham* inquiry are undisputed, the question of obviousness is reviewed de novo. *Soverain Software*, 705 F.3d 1333. Here, the parties' experts agree that a person of ordinary skill in the art would have had a bachelor's degree in computer science, electrical engineering, and at least two years of experience in the related fields. A20016-17 (938:24-939:14); A20608 (1530:12-18). MobileMedia does not dispute that Bayless is within the scope and content of the prior art.[10] MobileMedia did not present, and the district court did not instruct the jury to consider, any secondary indicia of non-obviousness.

---

[10] While Dr. Meldal testified about the irrelevant fact that Bayless discloses computer-telephony rather than cellular telephony (A20485 (1407:1-23)), MobileMedia did not dispute that Bayless falls within the scope and content of the prior art.

In the single factual dispute underlying the *Graham* analysis,
Apple's expert testified that with the configuration settings window in
Figure 42 of Bayless (below), a user could configure the Hotkey in
Bayless to comprise only a single key, such as the "F1" function key.
A20022-23 (944:25-945:22), A20025-26 (947:19-948:11), A20043-
445(965:14-967:10).



**Bayless, Figure 42 (A57035)**

In other words, Bayless permits the user to program a function
key to serve as a single-key Hotkey.  The PTO agreed, stating "the term
Hotkey suggests that single key operations are contemplated."  A43381.
Without citing any contemporaneous documents or other evidence to
support his bald conclusion, MobileMedia's expert disagreed.  A20505-
06 (1427:13-1428:19) ("I don't see the evidence for that."); A20511-14
(1433:5-1436:13) (Dr. Meldal evading Apple's cross-examination asking
him to confirm that the patent would disclose every element if Bayless's

Hotkey was configured to be the "F1" key).  Even accepting

MobileMedia's expert's opinion that Bayless cannot be configured to

permit a one-key Hotkey, Bayless still renders claim 23 obvious as a

matter of law for at least two reasons.

First, there is no dispute that programming one-key Hotkeys was

possible and known to a person of ordinary skill in the art at the date of

the invention.  Apple's expert explained that using a one-key Hotkey

was not a point of novelty, but something that "ordinarily would be

done." A20043-45 (967:1-10).  Numerous authorities from the relevant

time confirm that using one key as a Hotkey was commonplace.  *See,*

*e.g.*, *Lotus Dev. Corp. v. Paperback Software Int'l*, 740 F. Supp. 37, 64

(D. Mass. 1990) (describing software in 1990 in which "[e]ach program

assigns certain frequently-used commands to the various "function

keys" (labelled "F1", "F2", "F3", etc.).")); *Telemarketing Resources v.*

*Symantec Corp.*, No. 88-20352, 1989 WL 200350, at *1 (N.D. Cal. 1989)

(describing software available since 1983 that used "function keys to

perform tasks and to translate regular keys to function keys").

While not challenging that programming one-key Hotkeys was

common, MobileMedia disputed whether a person of ordinary skill in

the art would have found it obvious to substitute one key for two keys. A43.  This argument relies on a misrepresentation of the claim scope. MobileMedia's expert testified that the substitution would not have been obvious because solving the problem in Bayless with "a computer with a full keyboard," implicates "a different set of tradeoff evaluations" than solving the problem in the context of a cellular phone.  A20491-92 (1413:4-1414:5).  But the asserted claims recite a method for a "communications terminal device," which, as even MobileMedia's expert conceded, "[is]n't limited to a cellphone."  A20493-94 (1415:5-1416:21). The triviality of substituting one key for two keys to a person with a bachelor's degree in computer science and two years of relevant experience demands the opposite conclusion from that reached by the district court.

Second, the district court's denial of JMOL was an error for another, independent reason—MobileMedia's argument improperly relied on a limitation not recited by claim 23.  Where the only evidence supporting a verdict for validity is based on a limitation not present in the asserted claim, the appropriate relief is to reverse the judgment and

find the claim invalid. *See Blackboard, Inc. v. Desire2Learn, Inc.*, 574 F.3d 1371, 1380 (Fed. Cir. 2009).

Claim 23 does not recite the word "key." Thus, MobileMedia's theory demands that the term "only a single … operation" be interpreted to include the additional limitation of excluding anything other than pressing a single "key." MobileMedia's counsel argued that the "only a single operation" limitation is not satisfied by a "two-key operation." A20651-53 (1573:24-1575:13). MobileMedia's expert similarly testified "that each key is a separate predetermined selection operation" (A39) and pressing a two-key Hotkey is not a single "operation," even if the user presses the two keys "simultaneously with one hand." A20510 (1432:20-25).

MobileMedia's attempt to equate a single "operation" with pressing a single "key" disregards the specification, claims, and plain and ordinary meaning of an "operation." Figure 11A discloses an embodiment in which the user action that prompts the display of processing items, i.e., the "predetermined selection operation," comprises more than pressing a single key—it includes pressing a key,

83

then scrolling down with a jog dial, and then clicking in on a jog dial.

A32737 (Figs. 11A-11D), A32744 (14:19-35).



**'068 Patent, Figures 11 (A32737) (annotated)**

The specification also describes prior art using the word "operation" to mean pressing two keys. A32738 (1:29-33). Thus, MobileMedia's argument for validity relies on a narrow understanding of an "operation" that contradicts the specification.

The PTO confirmed claim 23 in reexamination based on the same error. *Pharmastem Therapeutics, Inc. v. Viacell, Inc.*, 491 F.3d 1342, 1366-67 (Fed. Cir. 2007) (reversing a denial of JMOL and remanding for judgment of obviousness where PTO's explanation for confirming the patent contained critical flaws). Before the PTO, MobileMedia argued

that its argument for confirming claim 1 (which recites a single "key")

applies "with equal force" to claim 23 (which recites a single

"operation").  A43439-41.  The PTO confirmed both claims.  In doing so,

however, even the PTO seemed to agree that Bayless discloses a single

"operation":

> Regarding claims 1, 23, and 49 and all claims dependent therefrom, none of the references cited by the Requestor teach the claimed feature of displaying "said processing items on said display means when only a single predetermined operation key of said input means is pushed by the user." …The closest prior art, Bayless, suggests ***the operation of a [sic] two keys*** in order to display the processing items on the display means (Bayless, Figure 42— hotkey is presed [*sic*]).

A43448 (emphasis added).  Neither MobileMedia nor the PTO explained

how Bayless can both "suggest[] the operation of [] two keys in order to

display the processing items" and at the same time fail to teach "only a

single … operation."

Because configuring a single-key Hotkey in place of the two-key

Hotkey in Bayless would have been a trivial task for a person with a

bachelor's degree in computer science and two years of relevant

experience, and because the only basis for MobileMedia's argument

relies on a limitation not recited by the claim, Dr. Meldal's testimony is insufficient to support a finding of non-obviousness.

## CONCLUSION

For the foregoing reasons, this Court should reverse the district court's judgment of infringement and validity of claim 73 of the '078 Patent and claim 23 of the '068 Patent and enter judgment of non-infringement and invalidity of these claims.


Date: February 3, 2014                    /s/ *Luann L. Simmons*
                                          Luann L. Simmons
                                          of O'Melveny & Myers LLP

# CERTIFICATE OF COMPLIANCE

Counsel for Defendant-Appellant Apple Inc. certifies:

1.    This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B).  This brief contains 13,910 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii) and Federal Circuit Rule 32(b).

2.    This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the typestyle requirements of Federal Rule of Appellate Procedure 32(a)(6).  This brief has been prepared in a proportionally spaced typeface using Word 2010 in 14-point Century Schoolbook.


Date:  February 3, 2014                    Respectfully submitted,


                                           By:   /s/ *Luann L. Simmons*
                                                 Luann L. Simmons

## CERTIFICATE OF SERVICE AND FILING

I certify that on February 3, 2014, I electronically filed the

foregoing, BRIEF OF DEFENDANT-APPELLANT APPLE INC., using

the Court's CM/ECF filing system, thereby serving opposing counsel

pursuant to Fed. Cir. Rule 25(a) and ECF-2(d) of the Court's May 17,

2012 Administrative Order Regarding Electronic Case Filing.


Date:  February 3, 2014                    /s/ *Luann L. Simmons*
                                           Luann L. Simmons
                                           of O'Melveny & Myers LLP